New Jersey Department of Labor,
Workmen's Compensation Bureau.

## DOROTHY MADDOX, PETITIONER, v. NEW YORK TELE-PHONE COMPANY (NEW JERSEY BELL TELEPHONE COMPANY, SUCCESSOR), RESPONDENT.

\*  \*  \*  \*  \*  \*  \*

I do find and determine as follows:

1. That the petitioner was, on the 14th day of December, 1926, in the employ of the respondent in the capacity of a switchboard operator, at its Bloomfield office, and had been employed in that capacity for about eighteen months.

2. That at the time of the injury hereinafter mentioned petitioner received as wages, in said employment, the sum of $18 per week.

3. That on December 14th, 1926, between seven-thirty and eight P. M. petitioner, while in the course of her employment and engaged in operating the switchboard, struck her right elbow against the shelf or table of the switchboard. Her right shoulder snapped, the shoulder blade or scapula fell out or protruded immediately, her neck became swollen and she experienced pain in and loss of function of her right arm and shoulder. She was immediately sent home. On the following morning she was treated by Dr. Wolfe, her family physician. He treated her for several months and had great difficulty in keeping the scapula in place. After about six months of unsuccessful treatment, petitioner was operated upon by Dr. Nicola. The operation disclosed that the muscles of the sca-

pula were severed and shortened. Dr. Nicola sewed in the scapula with several muscles which he had removed from the petitioner's right thigh. She was at the hospital for three and a half weeks, and was incapacitated thereafter until on or about November 16th, 1927. She now has a thirty per cent. permanent disability in the function of her right arm and shoulder.

The respondent alleged that the petitioner's condition was due to a recurrence of an old injury. It appears that in 1922 petitioner dislocated her shoulder by striking her elbow against the desk; but Dr. Wolfe who treated her for that injury testified that she was healed after several week's treatment and this is corroborated by the testimony of petitioner and her parents. It is satisfactorily established that the petitioner was free from any physical ailment when she was employed by the respondent eighteen months before the occurrence of the accident and that she thus continued until the happening of the injury complained of. Dr. Holden, the respondent's witness, testified that he examined the petitioner in January, 1927, and did not find any evidence of congenital weakness in the shoulder or any weakness due to paralysis.

The respondent also sought to charge the injury to a fall which the petitioner sustained on December 12th, 1926. It is true that the petitioner fell on the ice on December 12th, striking her elbow, but it is established that she sustained no injury therefrom. All the physicians agree that if the injury was due to the fall, it would have manifested itself immediately and would have been accompanied with pain, swelling and loss of function. None of these symptoms appeared, and the petitioner attended to her household tasks on December 12th and 13th and operated the switchboard on the 14th without any discomfort.

There is a conflict in the medical testimony as to just what may have caused petitioner's injury. Dr. Wolfe and Dr. Nicola testified that the blow to the elbow was the probable cause of the injury. Dr. Holden admitted that a violent blow might cause the injury, but he was inclined to believe that it was more likely to have been caused by the stretching and straining incident to operating the switchboard when reaching for high

connections. The fact remains that the petitioner did sustain the injury, and I do not find it necessary to decide this medical issue. The preponderance of the medical testimony conclusively shows that the injury to the scapula was caused by the accident, injuring and severing the muscles supporting the scapula, and causing a permanent injury to the shoulder of thirty per cent., and causing an equal loss of function to petitioner's right arm. A scar about five to six inches in length still marks the incision made in the operation.

4. That the respondent herein had knowledge of said accident and had proper notice of the same.

5. I further find that the action arose out of and in the course of petitioner's employment, and that the petitioner is now suffering from said injury and that she is entitled to receive compensation for sixty weeks at the rate of $12 per week, or a total of $720, for permanent disability; and that she is also entitled to receive for temporary disability from December 14th, 1926, to November 16th, 1927, the sum of $576 (at the rate of $12 per week). The respondent having paid petitioner two weeks full pay and four weeks half pay, amounting to $54, the amount for temporary disability is therefore fixed at $522. Petitioner is also entitled to receive $608.50 for medical expenses and the costs of this proceeding.

\*       \*       \*       \*       \*       \*       \*

HARRY J. GOAS,
*Deputy Commissioner.*